# IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF GEORGIA
### AUGUSTA DIVISION

| | | |
|---|---|---|
| WENDELL A. JENIFER, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| | * | CV 106-139 |
| vs. | * | |
| | * | |
| FLEMING, INGRAM & FLOYD, P.C., | * | |
| f/k/a FLEMING, BLANCHARD, | * | |
| JACKSON & DURHAM, P.C.; JOHN | * | |
| FLEMING; and WILLIAM M. | * | |
| FLEMING, | * | |
| | * | |
| Defendants. | * | |

---

**O R D E R**

---

Presently before the Court in the captioned case are Defendants' Motions for Summary Judgment. (Doc. nos. 47, 52.) Construing the facts in favor of Plaintiff, the non-moving party, as the Court must do at this stage, and upon consideration of the briefs submitted by counsel, oral argument on December 13, 2007, and the relevant law, Defendants' motions are **DENIED**.

## I.  BACKGROUND

This is a legal malpractice case brought by Plaintiff, Wendell A. Jenifer, against a law firm and two individual lawyers for alleged acts of negligence in their handling of his slip-and-fall case in the Superior Court of Richmond County, Georgia.

## A. The Underlying Slip-and-Fall Case

On March 13, 1999, Plaintiff fell down the stairs at the Sunset Inn in Augusta, Georgia. (Compl. ¶¶ 1, 7.) On March 15, 1999, Plaintiff contacted Defendant John Fleming and the Defendant law firm then known as Fleming, Blanchard, Jackson & Durham, P.C. ("the Fleming Firm"), which agreed to represent Plaintiff in the resultant slip-and-fall case on a contingent fee basis. (Id. ¶ 9; Compl. Ex. A.)

The contract between Plaintiff, John Fleming, and the Fleming Firm specifically provided that the employment was accepted "on the condition that [the Fleming Firm] will investigate said claim, and if it appears to be a recoverable claim, will proceed to handle the same." (Id.) Also on March 15, 1999, John Fleming wrote to the manager of the Sunset Inn: "Our investigation of the incident reveals that the steps [sic] your establishment were negligently maintained; and we, therefore, intend to pursue a claim against you to compensate Mr. Jenifer for his injuries." (Compl. Ex. B.)

In September of 1999, Defendant William M. Fleming ("Bill Fleming"), John Fleming's nephew, joined the Fleming Firm. Bill Fleming inherited numerous cases, including Plaintiff's case, primarily from his uncle John Fleming. Bill Fleming's prior experience was predominantly in criminal law as he had worked for the District Attorney from the time he graduated law school until joining the Fleming Firm. (See B. Fleming Aff. ¶ 2.)

On March 9, 2001, just before the statute of limitations expired, Defendant Bill Fleming filed a complaint on

Plaintiff's behalf in Richmond County Superior Court. (Compl. Ex. C.) According to that complaint, the stairs were dangerous because they had been improperly "painted with a substance that was slick." (Id. ¶ 7.) The complaint named "Sunset Inn, Inc." as the defendant.[1] On March 27, 2001, Sunset Inn filed an answer by and through Mr. Richard R. Mehrhof ("Mr. Mehrhof"), who was retained by Companion Property & Casualty Insurance Company. The answer denied ownership of the subject hotel. (Pl.'s Ex. 15, ¶ 3.) Mr. Mehrhof took Plaintiff's deposition on July 12, 2001. Bill Fleming met with Plaintiff briefly before his deposition. (Jenifer Aff. ¶ 4.)

In March 2002, Mr. Richard Ingram, a partner at the Fleming Firm, became aware of multiple potential acts of malpractice committed by Defendants. (Ingram Dep. at 44-45.) The Fleming Firm's malpractice insurance policy was cancelled on June 26, 2002, effective August 29, 2002, until, among other things, the Flemings were no longer a part of the Fleming Firm. (Id. at 72-73; Pl.'s Ex. 28I.) By this time, Bill Fleming's actions as an associate included allowing at least 12 causes of action to lapse under the applicable statutes of limitations and up to 23 potential malpractice acts by Bill Fleming and the Fleming Firm had been identified.[2] (Ingram Dep. at 44; Pl.'s Exs. 28C, 28G, 28L.) Bill Fleming resigned from the Fleming

---

[1] Sunset Inn, Inc.'s registered address is in Mount Vernon, Georgia. (See Pl.'s Ex. 12D.)

[2] Defendants blame these problems on a faulty "tickler" system, which was supposed to notify the attorneys of impending deadlines. Defendants also blame a paralegal who was responsible for maintaining this "tickler." (See, e.g., Pl.'s Ex. 28H.)

Firm, effective September 1, 2002. (B. Fleming Dep. at 25; Pl.'s Ex. 28M.) John Fleming also retired for a period of time.[3] (Pl.'s Ex. 28M.)

The parties dispute who became responsible for Plaintiff's case upon Bill Fleming's departure from the Fleming Firm. Mr. Ingram met with Plaintiff on September 23, 2002 to discuss Bill Fleming's departure from the Fleming Firm and how the case would be handled from that point forward. There was a fundamental factual dispute about what transpired at that meeting. According to Mr. Ingram, he informed Plaintiff that Bill Fleming had his file and there was a potential malpractice issue due to Bill Fleming having sued the wrong party. Mr. Ingram and Plaintiff agree that Mr. Ingram told Plaintiff not to worry because this would be covered by the Fleming Firm's malpractice insurance. (See Ingram Dep. at 32-34; Jenifer Dep. at 32.)

Plaintiff testified that Mr. Ingram did not make it clear that Bill Fleming would be solely representing him, and Plaintiff remained under the impression that John Fleming was the attorney in charge of his case. (See Jenifer Dep. at 30-34.) Plaintiff contends Mr. Ingram told him that John Fleming wanted Bill to take the file to work out any problems but that John Fleming and Mr. Ingram would "oversee Bill" and hopefully achieve a "good outcome." (Id. at 32.) Plaintiff claims he told Mr. Ingram that he did not want Bill Fleming to represent him. (Id. at 31, 33.)

---

[3] John Fleming rejoined the Fleming Firm on October 1, 2002. (See Pl.'s Ex. 30D.)

A few weeks after that meeting, on October 4, 2002, Mr. Ingram wrote to Mr. Mehrhof:

> "Since I spoke with you early last week, we did an investigation of who the registered agent is for Sunset Inn. Enclosed is a copy of our findings. If you are going to file a Motion for Summary Judgment, I will have John Fleming sign pleadings since [Bill] Fleming left our practice."

(Pl.'s Ex. 33A.) This letter also contained a handwritten note requesting Mr. Mehrhof to "[p]lease give me a call before you file any motions because it will be another week or so before I can get John's malpractice coverage back in effect." (Id.) On October 16, 2002, Mr. Mehrhof filed a motion for summary judgment contending that the real party in interest was Hotel Ventures of Augusta, Inc., not Sunset Inn, Inc., and the statute of limitations had expired without the complaint being properly served. (Pl.'s Ex. 35.)

On October 17, 2002, Mr. Ingram sent Bill Fleming a memorandum informing him that Mr. Mehrhof's motion for summary judgment had arrived in the Firm's mail and apprising him of the proper defendant who should have been sued. (Pl.'s Ex. 37.) The memorandum further informed Bill Fleming that "[t]his is not a claim unless the Judge dismisses it" and "John Fleming asked that we send this file to you." (Id.) On November 7, 2002, Mr. Ingram wrote to Mr. Mehrhof: "John Fleming and I agreed that [Bill] Fleming . . . should conclude this civil action under his name only. We have returned the file to him with Mr. Jenifer's consent." (Pl.'s Ex. 38.) On November 15, 2002, Bill Fleming filed a motion for leave of court to amend

the complaint to substitute Hotel Ventures of Augusta, Inc. as the proper defendant. (Pl.'s Ex. 39.)

On November 21, 2002, Bill Fleming and Mr. Mehrhof had a lengthy telephone conversation about Plaintiff's case. Subsequent to their discussion, Bill sent via telefax to Mr. Mehrhof a list of cases regarding "superior knowledge," all of which were unfavorable to Plaintiff's case. (Pl.'s Ex. 41.) Very shortly thereafter, on December 2, 2002, Mr. Mehrhof filed an amended motion for summary judgment, arguing that Plaintiff had "superior knowledge" of the slippery condition of the stairs. (Pl.'s Ex. 42A.)

Bill Fleming did not file a written response or other evidence in opposition to the amended motion for summary judgment. (B. Fleming Dep. at 241-43.) On March 18, 2003, Bill Fleming attended a hearing before the Honorable J. Carlisle Overstreet, Superior Court of Richmond County, with respect to the motion for summary judgment. (Id. at 245.) There is no transcript of this proceeding, and it is unclear what arguments or evidence Bill Fleming presented at the hearing, if any. (See id.; Mehrhof Dep. at 102-03.)

Signing a proposed order submitted by Mr. Mehrhof, Judge Overstreet granted the amended motion for summary judgment on March 19, 2003, disposing of the case on the merits of the "superior knowledge" issue and not reaching the issue of the improper party defendant. (Pl.'s Ex. 46.) Case law cited in Bill Fleming's telefax made its way into both Mr. Mehrhof's amended motion and the proposed order ultimately adopted by Judge Overstreet. (See Pl.'s Exs. 42A, 46.) Pursuant to state

law, Plaintiff had thirty days from March 19, 2003 in which to file a notice of appeal.

The Fleming Firm sent a letter dated March 31, 2003 to Plaintiff informing him of Judge Overstreet's adverse ruling and affirmatively seeking to terminate the attorney-client relationship. (Pl.'s Ex. 47B.) The letter stated in part: "Our firm, pursuant to the contingency fee contract, ends our relationship at this point." (Id.) Thus, after approximately two weeks of the thirty days to appeal the ruling had already run, Plaintiff received this termination letter instructing him to retrieve his file from Bill Fleming's office. Plaintiff had not received any documentation terminating or altering the original written fee agreement with John Fleming and the Fleming Firm until receiving the letter of March 31, 2003. (Jenifer Aff. ¶ 7.)

Also of note, the March 31, 2003 letter stated that "[i]t does appear Mr. [Bill] Fleming filed a Motion in opposition to the Defendant's Motion for Summary Judgment and competently argued the same." (Pl.'s Ex. 47B.) To counter the assertion made by Defendants in the March 31, 2003 letter, Plaintiff has shown facts indicating that while Bill Fleming filed a brief opposing the initial motion for summary judgment, the brief only addressed the issue of the improper defendant and requested leave of court to substitute the proper defendant. Plaintiff contends that far from "opposing" and "competently arguing" the issue, the Superior Court docket is unequivocal in that Bill Fleming did not file a written response to the amended motion for summary judgment which included, for the

first time, the issue of "superior knowledge" and the damaging case law from Bill Fleming's own telefax. (Id.) There is no transcript from the hearing, and Defendants have presented no evidence regarding what may have been argued at the hearing.

After receiving the letter and retrieving his file from Bill Fleming, Plaintiff contacted several other attorneys, but he was unable to secure counsel in the days remaining after receipt of the March 31, 2003 termination letter. (See Jenifer Dep. at 99-105.) On April 21, 2003, Plaintiff filed a *pro se* "Motion for Reconsideration." Plaintiff urged the court to reconsider the judgment against him for the following reasons: (1) "The Judgment was entered contrary to the facts of the case," (2) "The laws of this State did not support the Judgment," and (3) The Judgment failed to address all issues to the case, more particularly whether the Sunset Inn, Inc. was the right party to the lawsuit." (Doc. no. 55, Ex. Q.) Plaintiff's *pro se* "Motion for Reconsideration" was dismissed on April 25, 2003. (Doc. no. 55, Ex. Q.)

**B. Plaintiff's Claims of Professional Malpractice**

Plaintiff claims that the following are acts of professional malpractice which constitute a breach of Defendants' contractual and fiduciary duties to Plaintiff: (1) John Fleming's and the Fleming Firm's failure to properly supervise the work of Bill Fleming; (2) Defendants' failure to properly investigate Plaintiff's claims and failure to name the proper party as defendant; (3) Defendant's failure to disclose to Plaintiff all material facts that concerned his case and conflicts of interest; (4) Defendants' failure to file a

response brief or provide evidence to rebut the amended motion for summary judgment; (5) Defendants' failure to avoid actions inconsistent with Plaintiff's best interests; and (6) Defendants' abandonment of their representation of Plaintiff. Plaintiff contends that these alleged acts of malpractice caused him to lose his ability to recover against Sunset Inn. Finally, Plaintiff claims that some of Defendants' conduct was deliberate in order to prevent a malpractice claim for the failure to sue the proper party before the statute of limitations expired. (See generally Compl.)

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when there are no genuine issues of fact and the movant is entitled to summary judgment as a matter of law. See Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, all facts and reasonable inferences are to be construed in favor of the non-moving party. Hogan v. Allstate Ins. Co., 361 F.3d 621, 625 (11th Cir. 2004). The party opposed to the summary judgment motion, however, "may not rest upon the mere allegations or denials in its pleadings. Rather, its responses . . . must set forth specific facts showing that there is a genuine issue for trial." Walker v. Darby, 911 F.2d 1573, 1576-77 (11th Cir. 1990). In the instant action, because of the multiple, significant and fundamental factual disputes pervasive in the evidence, summary judgment is inappropriate.

### III. DISCUSSION

### A. Statute of Limitations

Defendants first contend Plaintiff's claims are barred by the four year statute of limitations governing malpractice cases. The instant action was filed on September 8, 2006. Thus, Defendants assert any claims of alleged negligent conduct that occurred prior to September 8, 2002 are barred. However, while the *initial* failure to investigate occurred prior to September 2002, Defendants had up until March 18, 2003 (the day of the hearing before Judge Overstreet) to file an opposing affidavit to the amended motion for summary judgment, take depositions, or merely investigate to obtain evidence to present in opposition at the hearing.

The Georgia Supreme Court has held that where an attorney's duties encompass alternative means of "safeguarding" the client's interests, the statute of limitations runs from the time the lawyer fails to do both. See Barnes v. Turner, 278 Ga. 788, 791, 606 S.E.2d 849, 852 (2004). Put simply, even though some of Defendants' omissions were prior to September 2002, the alternative courses of conduct of safeguarding Plaintiff's interests did not manifest until the hearing in March 2003. Therefore, Plaintiff's claims are not barred by the statute of limitations, and Defendants are not entitled to summary judgment on that ground.

### 2. Failure to Use Ordinary Care

In a legal malpractice action the client has the burden of establishing three elements: (1) employment of the defendant attorney; (2) failure of the attorney to exercise ordinary care,

10

skill, and diligence; and (3) that such negligence was the proximate cause of damage to the client plaintiff. See Tante v. Herring, 264 Ga. 694, 453 S.E.2d 686 (1994). "With respect to the 'ordinary care, skill and diligence' element, the law imposes upon persons performing professional services the duty to exercise a reasonable degree of skill and care, as determined by the degree of skill and care ordinarily employed by their respective professions under similar conditions and like surrounding circumstances." Allen v. Lefkoff, Duncan, Grimes & Dermer, P.C., 265 Ga. 374, 375, 453 S.E.2d 719, 720 (quotation, citation and emphasis omitted).

Defendants argue that they did not fail to exercise ordinary care and that their actions were not the proximate cause of Plaintiff's damages. Specifically, Defendants John Fleming and the Fleming Firm argue they did not owe a duty to Plaintiff because they claim their attorney-client relationship ended when Plaintiff "agreed for [Bill] Fleming to continue to represent [Plaintiff] after [Bill] left the Fleming firm." (Doc. no. 54 at 6.)

The test of whether a duty is owed is one of foreseeability, and if an attorney volunteers to act, or otherwise gives the plaintiff justifiable grounds for relying on him, he may be liable for malpractice. See Rogers v. Hurt, Richardson, Garner, Todd & Cadenhead, 203 Ga. App. 412, 416 S.E.2d 29, 33 (1992); cf. Driebe v. Cox, 203 Ga. App. 8, 11, 416 S.E.2d 314, 316 (1992). "All that is necessary is a 'reasonable belief' on the part of the would-be client that he

or she was being represented by the attorney." Calhoun v. Tapley, 196 Ga. App. 318, 319, 395 S.E.2d 848, 849 (1990). The attorney-client relationship can be precluded by a written disclaimer signed by the putative client. However, an attorney's failure to document non-representation in writing, coupled with the giving of some advice, has given rise to a jury question on the issue of whether a relationship existed and thus, a duty owed to the client. See Mays v. Askin, 262 Ga. App. 417, 419-20, 585 S.E.2d 735, 737-38 (2003).

In this case, Plaintiff testified that he did not agree for Bill Fleming to solely represent him and that he did not realize John Fleming was no longer his attorney. Plaintiff's contentions are consistent with the fee agreement which was the operative contract at all times between Plaintiff, John Fleming, and the Fleming Firm. In addition, when specifically asked if he told Plaintiff that the Firm was no longer involved in the case, Mr. Ingram testified that he did not do so. (Ingram Dep. at 24.) Mr. Ingram also admitted that as of September 2002 there was "no writing" making it clear to Plaintiff that John Fleming and the Fleming Firm were no longer representing him; instead Mr. Ingram stated that is "just what happened" after his meeting with Plaintiff. (Id. at 25.)

Moreover, while Defendants allege the relationship ended at the September 23, 2002 meeting with Mr. Ingram, Plaintiff has presented evidence indicating that they were nonetheless subsequently involved in the case. First, on October 4, 2002, Mr. Ingram wrote to Mr. Mehrhof informing him that John Fleming

would sign pleadings since Bill Fleming had left the firm. (Pl.'s Ex. 33A.) Second, on October 17, 2002, Mr. Ingram sent Bill Fleming a memorandum informing him that they had received Mr. Mehrhof's motion for summary judgment and apprising him of the proper defendant who should have been sued. (Pl.'s Ex. 37.) Third, on November 7, 2002, Mr. Ingram wrote to Mr. Mehrhof that "John Fleming and I agreed that [Bill] Fleming . . . should conclude this civil action under his name only." (Pl.'s Ex. 38.)

Finally, the March 31, 2003 letter to Plaintiff indicates that the relationship did not end until that point in time as it specifically stated: "Our firm, pursuant to the contingency fee contract, ends our relationship at this point." Indeed, at oral argument counsel for the Fleming Firm admitted that Mr. Ingram "regretted" the language used in the letter and encouraged the Court to assume the letter did not exist. The Court, however, declines to do so. There is a genuine issue of fact as to what the status of the relationship was after the September 23, 2002 meeting. Defendants John Fleming and the Fleming Firm are not entitled to summary judgment on this ground.

Similarly and for the same reasons, Defendants John Fleming and the Fleming Firm are not entitled to summary judgment on Plaintiff's vicarious liability claims. A lawyer can be liable in professional malpractice for work performed under his supervision. See Centrust Mortgage Corp. v. Smith & Jenkins, P.C., 220 Ga. App. 394, 396, 469 S.E.2d 466, 468 (1996). An

attorney responsible for the firm's procedures and practices for doing business or for the system in which the firm operates may be liable for the other attorney's failures. <u>Bill Parker & Assoc. v. Rahr</u>, 216 Ga. App. 838, 841, 456 S.E.2d 221, 224 (1995).

Defendants contend that they cannot be held vicariously liable for the alleged malpractice of Bill Fleming because Bill Fleming resigned from the Fleming Firm on September 1, 2002. While Bill Fleming "shared space" in the Fleming Firm for approximately forty-five days thereafter, Defendants assert in conclusory fashion that "it is undisputed that there was no legal relationship between these parties after September 1, 2002." (Doc. no. 54 at 10-11.) This contention is at odds with the aforementioned communications that took place between the Fleming Firm, Mr. Mehrhof, and Bill Fleming after September 1, 2002. Consequently, there is a genuine issue of fact as to whether each Defendant failed to exercise ordinary care in the representation of Plaintiff.

**3. Proximate Cause**

A correct statement of Georgia law is that to prevail on a legal malpractice claim, Plaintiff must show that but for the attorney's negligence, the outcome would have been different; "any lesser requirement would invite speculation and conjecture." <u>Houston v. Surrett</u>, 222 Ga. App. 207, 209, 474 S.E.2d 39, 41 (1996). As an initial matter, Defendants argue that the burden is somehow shifted for the proximate cause element of a malpractice action so that at the *summary judgment*

*stage* Plaintiff must prove that he certainly would have (not may have) prevailed in the underlying case. This argument is not supported by case law. The law does not require a plaintiff, at the summary judgment stage, to show that a jury could reach no outcome other than a finding of malpractice.

At the *summary judgment stage* it is only necessary that Plaintiff show there is sufficient evidence in the record from which a jury could find in his favor on every required element. A defendant in a legal malpractice case is entitled to summary judgment only if he shows that the record reveals there is no evidence sufficient to create a jury issue on at least one element of the plaintiff's case. Id. (quoting Huntington v. Fishman, 212 Ga. App. 27, 29, 441 S.E.2d 444 (1994)). In other words, to satisfy the burden of proof on summary judgment, Defendants must "point out by reference to the record that there was an *absence* of proof adduced by [Plaintiff] on the issue of proximate cause." Szurovy v. Olderman, 243 Ga. App. 449, 452, 530 S.E.2d 783, 786 (2000)(emphasis added). Further, issues of proximate cause are reserved for the jury except in plain and unequivocal cases. See Both v. Frantz, 278 Ga. App. 556, 562, 629 S.E.2d 427, 433 (2006) (finding a jury issue and reversing summary judgment on a legal malpractice claim). There is simply no case that stands for the burden-shifting urged by Defendants.[4]

---

[4] In their supplemental brief, Defendants rely on Hunt v. Tomlinson, 799 F.2d 712 (11th Cir. 1986) for their contention that to avoid losing his case on a defendant's motion for summary judgment, a plaintiff must prove that but for the attorney's negligence he "would have" succeeded in the underlying case. (See Doc. no. 152.) However, in Hunt the Eleventh Circuit affirmed the application of the "would have" burden of proof for

Next, Defendants contend that they are entitled to summary judgment on the issue of proximate cause because Plaintiff did not have a viable slip-and-fall case. Defendants and their experts assert that Plaintiff would not have prevailed on the merits of the slip-and-fall case regardless of what Defendants did or did not do on his behalf. Defendant Bill Fleming contends that his failure to sue the proper party, failure to investigate, and failure to file a written response to the amended motion for summary judgment were not the proximate cause of Plaintiff's loss in the slip-and-fall case. Defendants John Fleming and the Fleming Firm make the same contentions and add that their alleged failure to properly oversee Bill Fleming was not the proximate cause of Plaintiff's loss.

Defendants argue that because Plaintiff had traversed the steps he had "superior knowledge" of their condition and thus could not have won the underlying case. The problem with this argument is Plaintiff's fundamental contention that Defendants' failure to investigate the case caused them to develop key factual misimpressions. Of import, Plaintiff contends that Bill Fleming failed to bring to the court's attention evidence that would have undermined key factual findings in Judge Overstreet's order and would have precluded summary judgment on the merits of the case.

Most notably, Judge Overstreet concluded in his order that

---

the proximate cause element in a legal malpractice claim at a bench trial, rather than at the summary judgment stage. 799 F.2d at 714. Thus, <u>Hunt</u> illustrates that a "would have" standard is what Plaintiff must prove to the finder of fact at trial, not on a motion for summary judgment. <u>See id.</u> Defendants' reliance on <u>Hunt</u> is unfounded. <u>Hunt</u> bolsters Plaintiff's position that the case should proceed to trial for resolution by the finder of fact.

Plaintiff had checked into his hotel room the day before the slip-and-fall, and therefore had already gone up and down the steps "on multiple occasions" before the slip-and-fall. (See Pl.'s Ex. 46.) This finding supported Judge Overstreet's ultimate conclusion that Plaintiff had "superior knowledge" of the slippery conditions. (Id.) Plaintiff testified in his 2001 deposition and again in 2007 that although he "checked in" and "got the key" before going out to dinner, he never actually went up to his room until returning from dinner several hours later. (See Doc. no. 55, Ex. A at 12, 43; Jenifer Dep. at 12-13.) Thus, contrary to what appears to be the only facts submitted to the trial judge in 2002, Plaintiff's current counsel has cited to testimony indicating that the slip-and-fall occurred on Plaintiff's *first* trip down the stairs, and he had not been up and down the stairs on "multiple occasions."

This factual distinction is important because there are Georgia cases that stand for the proposition that a single ascent of the stairs does not necessarily amount to "superior knowledge" when the fall occurs on the first descent of the stairs.[5] These cases suggest Plaintiff had a viable slip-and-fall claim and thus, arguably could have succeeded in the

---

[5] See Flournoy v. Hosp. Auth. of Houston County, 232 Ga. App. 791, 792, 504 S.E.2d 198, 200 (1998)("fact that plaintiff had successfully walked up the wet ramp the day of the accident cannot be said as a matter of law to have given him actual or constructive knowledge of the hazard of walking down the wet ramp"); Mac Int'l-Savannah Hotel, Inc. v. Hallman, 265 Ga. App. 727, 730, 595 S.E.2d 577, 580 (2004) (ascending stairs once was not superior knowledge when person fell upon exiting); Murray v. West Building Materials of Ga., 243 Ga. App. 834, 835, 534 S.E.2d 204, 206 (2000) (single ascent of stairs on which patron fell while descending not presumptive that she knew stairs were hazardous); Spivey v. Bd. of Educ. of Savannah & Chatham County, 194 Ga. App. 726, 727, 391 S.E.2d 783, 784 (1990) (prior ascent of stairs not superior knowledge even where plaintiff attempted to be careful on descent).

underlying case. Further, these cases bolster the importance and necessity for Plaintiff's lawyer to have argued that Plaintiff had only ascended the steps once as opposed to "multiple occasions" as stated in the order. While there is no transcript of the hearing, presumably if Bill Fleming had presented his client's account of the facts there would have been an issue of fact to at least preclude summary judgment on the "superior knowledge" issue.[6]

In addition, Plaintiff has brought forth facts from which a jury could conclude that the issue of the "slick" stairs was never explored by Defendants in the underlying case. According to Plaintiff, Defendants did not attempt to investigate or obtain evidence, such as photographing the stairs or interviewing hotel personnel, to corroborate Plaintiff's account of the incident. Yet, in the instant case Plaintiff's new counsel has obtained testimony from former employees of the Sunset Inn that the stairs were slick, they too had slipped on the stairs on more than one occasion, and the owners and managers had been told about the stairs' slick condition. (See James Aff. ¶¶ 5, 6; Strickland Aff. ¶ 4.)

Plaintiff contends that no one from the Fleming Firm visited the Sunset Inn to examine the stairs from the time of Plaintiff's fall in March 1999 until sometime in July 2001. Bill Fleming examined the stairs after Plaintiff's deposition was taken in July 2001, by which time the hotel had installed

_____

[6] Because there is a genuine issue of fact as to what, if anything, Bill Fleming argued on Plaintiff's behalf at the hearing, his contention that he did not breach a duty to Plaintiff by appearing before Judge Overstreet instead of filing a written response or presenting evidence in opposition to the amended motion for summary judgment also fails.

18

anti-slip strips on the stairs.[7] Plaintiff points out that Defendants did not move to compel answers to interrogatories that were served with the original complaint but never answered, and Defendants failed to obtain expert testimony regarding the condition of the stairs and liability of Sunset Inn.[8]

Eight years later, Plaintiff has obtained this evidence and expert testimony[9] for the instant action. Plaintiff contends that if this information had been sought by Defendants, it could have been used to show the "superior knowledge" of Sunset Inn or to at least prove an issue of fact existed to preclude summary judgment on the merits.

Defendants also argue that proximate cause cannot be proven because they are shielded by the doctrine of judgmental immunity in which lawyers are given great discretion regarding tactical decisions during the course of litigation. See Hudson v. Windholz, 202 Ga. App. 882, 886, 416 S.E.2d 120, 124 (1992). However, Georgia law provides that where conflicts of interest and judgmental immunity are both raised, a jury question arises. A conflict gives rise to the reasonable inference that such conflict influenced the exercise of discretion, thereby requiring a motion for summary judgment to be denied and

---

[7] In the instant case, Plaintiff deposed the owner of the Sunset Inn who testified that he installed the anti-slip strips on the stairs *after* Plaintiff's fall. (See Patel Dep. at 39-40.)

[8] See Jacobsen v. Boyle, 196 Ga. App. 411, 413, 397 S.E.2d 1, 3 (1990)(reversing summary judgment for attorney where client alleged attorney's failure to present certain relevant expert testimony violated the applicable standard of care because the expert testimony permitted an inference that could have resulted in a verdict for the client in the underlying action).

[9] Plaintiff presented the expert testimony of Jeffrey H. Goss, who opined that Sunset Inn failed to provide a stairway in compliance with applicable law and standards. (See Goss Aff. ¶ 9.)

allowing the jury to resolve such issues. See Paul v. Smith Gambrell & Russell, 267 Ga. App. 107, 111, 599 S.E.2d 206, 210 (2004). Thus, construing the facts in favor of Plaintiff, there is a genuine issue of fact as to whether a conflict of interest influenced Defendants' judgment and exercise of discretion.

Finally, Defendants argue that Plaintiff's own conduct of failing to file a notice of appeal was an intervening act that cut off their liability. However, clients seeking to sue their attorneys for malpractice which resulted in an adverse judgment do not have to first set aside the judgment before proceeding against their attorneys. See Peters v. Hyatt Legal Svcs., 211 Ga. App. 587, 590, 440 S.E.2d 222, 225 (1993) (citing Zepp v. Toporek, 211 Ga. App. 169, 172, 438 S.E.2d 636 (1993). Plaintiff has presented evidence that he attempted to secure counsel in the two weeks remaining after he received the Fleming Firm's termination letter. When Plaintiff was unable to secure new counsel, he filed a *pro se* "Motion for Reconsideration" in another attempt to preserve his right to appeal. Plaintiff thus contends that he did all that he could do in the limited amount of time he had. Therefore, there is an issue of fact as to whether Defendants' conduct proximately caused damage to Plaintiff.


## V. CONCLUSION

There are multiple genuine issues of disputed fact. This is simply not a case that can be appropriately resolved on summary judgment. Defendants' claims regarding attorney's fees, litigation expenses, and punitive damages also are not appropriately resolved on summary judgment.

Accordingly, Defendants' Motions for Summary Judgment (doc. nos. 47, 52) are **DENIED**.

**ORDER ENTERED** at Augusta, Georgia, this __24th__ day of January, 2008.

HONORABLE LISA GODBEY WOOD
UNITED STATES DISTRICT JUDGE